No. 83-502

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

IN RE THE MARRIAGE OF
SANDRA L. SMITH, n/k/a SANDRA L. ADAMS,

       Petitioner and Appellant,

  and

KEITH M. SMITH,

       Respondent and Respondent.

---

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John McCarvel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Gene A. Picotte, Helena, Montana

    For Respondent:

        Keith M. Smith, pro se, Great Falls, Montana
        Daniel Donovan, Great Falls, Montana

---

Submitted on Briefs: Oct. 25, 1984

Decided: December 13, 1984

Filed: DEC 13 1984

*Ethel M. Harrison*
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from an order of the Eighth Judicial District Court, Cascade County. The order issued after hearing on a show cause motion in which Sandra Smith (Sandra) sought to have Keith Smith (Keith) held in contempt for failure to pay child support. The court refused to find Keith in contempt and ordered Sandra to allow visitation under a modified visitation schedule. Sandra appeals. We affirm the district court.

Appellant raises four issues on appeal:

(1) Did the district court err in refusing to find Keith in contempt?

(2) Did the district court err in failing to order Keith to make past-due support payments?

(3) Did the district court err in modifying Keith's visitation rights where the issue was not raised in Sandra's motion?

(4) Did the district court err in failing to allow Sandra to make a full and adequate presentation of evidence in support of her motion?

The Smiths divorced in 1976. Their decree awarded custody of the couple's daughter, Natalie, to Sandra, subject to Keith's right of reasonable visitation, and required Keith to pay all of Natalie's medical expenses plus $100 per month for her support. The dissolution apparently went smoothly in the first years. The couple lived together briefly in 1980 and then parted again. Since their final separation, they have waged a continuous visitation-support battle.

In late 1980, the District Court ordered Keith and Sandra to seek counseling to assist them in working out a visitation schedule. The counseling failed to achieve the desired result; Keith remained unable to arrange for

2

vistation. In 1981, he petitioned for modification of his visitation rights, asking the court to establish a specific visitation schedule. Sandra cross-petitioned, asking that Keith be held in contempt for failure to pay child support. A specific visitation schedule was established.

The present encounter began in early 1983 when Keith and Natalie, with Sandra's consent, made plans to spend a holiday together. After Sandra's last-minute refusal to allow Natalie to accompany her father on the already-arranged trip, Keith again sought judicial assistance. The court ordered the special visitation and required Sandra to cooperate in making the necessary preparations. After a vituperative scene and frayed tempers, Natalie left for the holiday with her father. Four months later, Sandra brought this action.

Under the decree, Keith is required to pay $100 per month as child support and is also required to pay all reasonable medical, dental, hospital, doctor, optical and drug expenses for Natalie. The affidavit of the clerk of court establishes that Keith was sixteen months behind in his $100 per month child support payments. Sandra filed her affidavit and application for an order requiring Keith to pay the arrearage and hearing was held before the District Court. Sandra was represented by counsel and Keith appeared pro se. Both Sandra and Keith testified. In addition, the District Court interrogated the parties and Keith in particular. The district court found that Keith was not in contempt of the court order and had made a diligent effort to comply with the court's order. In addition, the district court ordered the specific visitation schedule granting Keith weekend visitation rights every other weekend.

I

3

Did the district court err in refusing to find Keith in contempt?

The district court stated in its order that Keith had testified that because of his physical and mental condition he was unable to make all the support payments required; that he was a real estate salesman and because of the depressed market for real estate in Great Falls, he was unable to make sufficient income with which to support himself and to pay the child support; and that he had made $100 per month support payments for thirteen months during the last two years. The court then stated:

> "The Court finds that he [Keith] is not in contempt of this Court's Order and has made a diligent effort to comply with this Court's Order."

The court did not make a specific order as to contempt other than this finding and conclusion.

While a more detailed series of findings would have been preferable, there is substantial evidence to support the court's statements as to Keith's testimony and there is substantial evidence to support the factual conclusion that Keith had made a diligent effort to comply with the order of the district court. Sandra contends that the record shows that Keith had made car payments, house payments and had otherwise supported himself. Sandra argues these facts indicate that Keith had not exercised a diligent effort to make support payments. This contention is without merit in light of the substantial evidence standard of review applied by this Court. In re Marriage of Concepcion (Mont. 1984), 687 P.2d 718, 720, 41 St.Rep. 1675, 1677. This Court will not re-weigh conflicting evidence.

Because of Keith's inability to pay, the district court refused to find him in contempt. It would have been better had the court addressed in more detail Sandra's request for a

4

contempt order regarding sixteen months of delinquent payments. Some frustration is natural where an attempt to force payment of delinquent child support payments results only in a summary conclusion. Unfortunately, no alternative was presented to the court. Sandra presented no specific evidence regarding Keith's ability to pay. While this is not a satisfactory solution to the problem, we find that the district court did not commit reversible error by refusing to find Keith in contempt.

## II

Did the district court err in failing to order Keith to make past-due support payments?

Sandra argues that the failure to order Keith to make payments was in effect a cancellation of past-due payments. There is no express cancellation in the order and such a cancellation cannot reasonably be inferred from the language of the order.

As previously noted, it would have been preferable that the court discuss in more detail what might be done with regard to the delinquent support payments. However, the court's refusal to again order Keith to make support payments is not reversible error. That obligation remains effective by virtue of the previous orders of the court. No action was taken which modified the existing requirement to make support payments.

While the court did not specifically order payment of past-due child support, the court did admonish Keith regarding his parental support obligation:

> ". . . [Sandra's husband] has no obligation to support your daughter. You better get that through your head. That is your daughter and it is your obligation to support that child. It doesn't matter if he is making a million dollars, it is your obligation to support that child.

5

". . .

". . . of course, [Keith] is required to make those [past-due] support payments if he is able to. That order stands, of course.

These statements are inconsistent with Sandra's contention that the court cancelled past-due payments.

We hold that there was no error in refusing to order Keith to make past due support payments.

III

Did the district court err in modifying Keith's visitation rights where the issue was not raised in Sandra's motion?

Sandra contends it was error for the district court to modify the visitation order where the only issue for hearing was whether Keith should be held in contempt for failure to pay child support.

As previously mentioned, both Sandra and Keith personally testified. Keith represented himself pro se and was quite vocal. The district court participated to a substantial degree in questioning the parties, which was appropriate in light of Keith's pro se appearance. In the course of testimony, it became clear that visitation rights were being considered by both Sandra and Keith. Sandra testified, and the Court found, that Sandra had refused to grant visitation because Keith was not current with child support payments. On the other hand, Keith testified that it did not seem reasonable to him to make child support payments when he was being denied his visitation rights. It is apparent that all parties, including the District Judge, had become extremely frustrated with this visitation-support dilemma.

The district court concluded that Sandra had denied Keith rights of reasonable visitation because he was not current with child support payments. The court concluded

that it was necessary to set out specific visitation periods for Keith with his daughter, Natalie, because Sandra was not agreeable to granting reasonable visitation rights. The court therefore specifically ordered that commencing September 16, 1983, Keith would have weekend visitation rights every other weekend commencing at 4 p.m. on Friday and ending at 8 p.m. on Sunday. Keith was to provide transportation. There is substantial evidence to support the District Court's conclusions.

As pointed out by the District Court, this is but a chapter in the long, continuing controversy between the parties. In Gall v. Gall (1980), 187 Mont. 17, 19, 608 P.2d 496, 498, we stated:

"Under section 40-4-217(3), MCA, the trial court may modify visitation rights whenever modification would serve the best interest of the child."

In Gall, we concluded it was not error for the trial court to modify the visitation rights of the husband. In a similar fashion, we here conclude that it was not error for the trial court to modify Keith's visitation rights.

IV

Did the district court err in failing to allow Sandra to make a full and adequate presentation of evidence in support of her motion?

Although the hearing terminated because of the frustration of all parties including the District Court, the record does not support Sandra's contention on this issue. The transcript shows that Sandra's counsel was allowed to cross-examine Keith and that Sandra testified until her own counsel excused her. She did not offer any specific evidence regarding Keith's ability to pay.

The District Court's order is affirmed.

7

Chief Justice Frank I. Haswell deems himself disqualified and, therefore, did not participate in this decision.

_____
Justice

We concur:

_____

_____

_____
Justices

Mr. Chief Justice Frank I. Haswell, deeming himself disqualified, did not participate in this decision.

Mr. Justice Frank B. Morrison, Jr., dissenting.

I respectfully dissent. The district court erred in failing to find Keith Smith in contempt and in failing to order him to make delinquent support payments. Further, the district court erred in modifying Keith Smith's visitation schedule with his daughter, Natalie, absent a showing that the modification would be in Natalie's best interest.

At the hearing on Sandra Smith Adam's show cause motion, Keith Smith testified as to why he was behind in his child support payments. He stated that illness and a nervous disorder prevented him from working and that a depressed real estate market prevented him from making a living as a real estate agent. However, when questioned about whether he had been attempting to sell real estate, he testified:

> "Oh, not really wholeheartedly. But there is [sic] no sales. It costs more to go out and drive around in your car than you're going to make selling real estate in this town, I can tell you that." Tr. p. 19.

Further, Smith volunteered a long, dismal story regarding his financial condition, while, at the same time, stating that he was making house and automobile payments as well as providing his own living expenses. Then, the following questioning occurred:

> "Q. You have been making payments, house payments, providing your own living expenses, staying up with your other obligations all during this time that you have been delinquent in child support payment as shown by the records of this Court, and you think that the fact that you have actually paid $1,300 for the support of a teen-aged daughter in a 24-month period is a real achievement?
>
> "A. That is way too much. They don't need any money. Especially from me. They don't need any money. You can ask -- you know how well off they are.
>
> "Q This is what --
>
> "A. Owner of two night clubs needs $100 a month from somebody who isn't working, that is pretty low

9

I believe. And then hold my daughter, blackmails me with my daughter. Tr. pp. 24-25.

At that point, the trial judge halted the questioning of Mr. Smith and stated:

"THE COURT: All right, that is enough of this. I have heard enough, you can get down.

"I have had enough of this case right now. The record shows that he has made a diligent effort with his income to support the child as far as I'm concerned." Tr. p. 25.

In my opinion, this finding is an abuse of the trial court's discretion. The evidence presented by Keith Smith at the hearing overwhelming supports a finding that regardless of his ability to do so, Smith is not going to pay child support for two reasons: (1) his ex-wife's husband makes more than enough money with which to support Natalie; and (2) his visitation rights were being denied. Neither of these reasons justifies Smith's failure to support his own daughter. Fitzgerald v. Fitzgerald (Mont. 1980), 618 P.2d 867, 37 St.Rep. 1350.

Tangentially, the majority's statement that Sandra presented no specific evidence regarding Smith's ability to pay, places that burden of proof on the wrong party.

"It has long been the law in this state that to avoid being held in contempt for failure to pay alimony, it is the duty of the defendant, 'for his own protection, to go into court, relate the circumstances, and pray for a revocation or modification of the order directing him to pay alimony.' State ex rel. Bordeaux v. Second Judicial District Court, 31 Mont. 511, 79 P. 13. (citations omitted)." Daniels v. Daniels (1966), 147 Mont. 57, 59, 409 P.2d 824, 825-826.

Likewise, once Sandra proved that Smith was delinquent in his child support payments, the burden shifted to Smith to show why and to prove his inability to make the payments.

Child support installments past due and unpaid are not subject to modification. Section 40-4-208(1), MCA. State Dept. of Revenue v. Dawson (Mont. 1984), 674 P.2d 1091, 41

10

St.Rep. 46. This cause should be remanded with instructions to the trial judge to find Smith in contempt and to hold the delinquent child support payable immediately and subject to enforcement by execution. Williams v. Budke (1980), 186 Mont. 71, 77, 606 P.2d 515, 518.

Regarding the visitation issue, §40-4-217(3), MCA, states in relevant part: "The court may modify an order granting or denying visitation rights whenever modification would serve the best interest of the child." See also, In re the Custody of R.L.S. and T.L.S. (Mont. 1983), 674 P.2d 1082, 40 St.Rep. 1982, where we held that modification of a visitation schedule is governed by the same standard used to judge modification of a custody decree, the best interests of the child. No evidence was presented concerning the best interests of Natalie. This cause should also be remanded on the visitation issue with instructions to the trial judge to conduct a hearing to determine Natalie's best interests, pursuant to §40-4-212, MCA.

_____
Justice

Mr. Justice Daniel J. Shea joins in the dissent of Mr. Justice Frank B. Morrison, Jr.