No. 87-504

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

_____

IN RE THE ADOPTION OF S.E.,
A Minor Child.

_____

APPEAL FROM:  District Court of the Fourth Judicial District
              In and for the County of Missoula
              The Honorable James B. Wheelis, Judge presiding

COUNSEL OF RECORD:

        For Appellant:

            Michael Sol; Sol & Wolfe, Missoula, Montana

        For Respondent:

            Bruce Barrett, Missoula, Montana

                            _____

                            Submitted on Briefs:  March 31, 1988

                                   Decided:  May 9, 1988

Filed:  MAY 9 - 1988

                    _Ethel M. Harrison_
_____
                         Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The natural father's parental rights were terminated by the District Court for the Fourth Judicial District, Missoula County. He appeals. We affirm.

We restate the issues as:

1. Did the District Court have jurisdiction over this proceeding?

2. Were the correct standards used in terminating the natural father's parental rights?

3. Did the District Court improperly deny the natural father's post-hearing motions?

4. Did the District Court err in refusing to grant a new trial based on surprise testimony?

5. Was the mother estopped from claiming that the natural father had failed to contribute to S.E.'s support for one year?

The marriage of S.E.'s natural parents was dissolved in December 1985, when S.E. was 16 months old. The dissolution order provided that the parents would share joint custody of S.E., with the mother as primary physical custodian. The natural father was granted visitation rights and was ordered to pay $200 per month in child support.

In April 1987, the mother's new husband filed a petition to adopt S.E. with the mother's consent. The petition asked that the natural father's parental rights be terminated because he had failed to support S.E. for a period of one year. This petition was filed in the same judicial district as the dissolution but as a separate cause of action. Shortly thereafter, the natural father filed a motion in the dissolution cause to hold the mother in contempt of court for terminating his visitation rights. The dissolution court

2

entered a stipulated visitation order pending resolution of the adoption proceedings.

At the hearing on the petition for adoption, evidence was presented that the natural father had paid a total of $250 toward S.E.'s support during the 17 months since the dissolution of marriage. The court found that the natural father had been unemployed or employed less than full time in the year preceding the filing of the petition, but that he was not physically or mentally disabled and had not sought employment in all fields in which he was qualified. It further found that he had received, or was entitled to receive, income from sale of several pieces of marital property, yet none of this income was paid toward the support of S.E.

The court concluded that the natural father's consent to the adoption was not required under § 40-8-111, MCA, which provides:

> (1) An adoption of a child may be decreed when there have been filed written consents to adoption executed by:
> (a) both parents, if living, or the surviving parent of a child, provided that consent is not required from a father or mother:
> . . .
> (v) if it is proven to the satisfaction of the court that the father or mother, if able, has not contributed to the support of the child during a period of 1 year before the filing of a petition for adoption; . . .

A final decree of adoption will be granted if the court finds that the adoption is in the "best interests of the child" under § 40-8-123(1) or § 40-8-124(6), MCA. The petition to terminate parental rights and for adoption of S.E. was granted, and the natural father appeals.

3

## I

Did the District Court have jurisdiction over this proceeding?

While the petition for adoption was filed in the same judicial district as the parents' dissolution of marriage, it did not come before the same judge. The natural father argues that only the court having jurisdiction over the dissolution proceedings should be able to consider the petition to terminate his parental rights.

No such jurisdictional requirement appears in or is implied by the statutes. The statutes only provide that venue for a proceeding for adoption lies in the district court of the county where the petitioner resides. Section 40-8-107, MCA. We will not impose the requirement suggested by the natural father where it has not been imposed by the legislature.

## II

Were the correct standards used in terminating the natural father's parental rights?

The natural father raises several arguments that the standard used to terminate parental rights under § 40-8-111, MCA, is not strict enough. He first asserts that a compelling state interest is required to terminate the fundamental right of parenthood. He argues that the "best interest of the child" test should not be used to choose between the natural parent and a prospective adoptive parent. He maintains that the question of whether parental rights should be terminated should not be left to the discretion of district court judges, but should be subject to a higher standard such as clear and convincing evidence or proof beyond a reasonable doubt. Finally, he argues that parental rights in a joint custody cannot be terminated in an adoption proceeding.

4

The natural father erroneously characterizes the determination of whether his parental rights should be terminated as a "best interest" question. That is not the case. The "best interest" test is applied under § 40-8-123 or 124, MCA, after the parental rights have been terminated, in determining whether the adoption should be allowed.

The District Court concluded that the natural father's consent to the adoption was not necessary under § 40-8-111 (1)(a)(v), MCA, because the natural father had not contributed to S.E.'s support during a period of one year prior to the filing of the petition for adoption. We have held that the standard of proof under this section is clear and convincing evidence. Matter of Adoption of E.S.R. (Mont. 1985), 706 P.2d 132, 133, 42 St.Rep. 1448, 1450. The undisputed testimony was that the natural father was unemployed or self-employed cutting firewood at $60 a week for much of the time since the dissolution of marriage. He did not seek assistance from any employment agency in finding work and did not apply for jobs in the janitorial or sales field, in both of which he had worked previously. He did not contribute his income from sale of marital assets to S.E.'s support. The ledger kept by the clerk of court shows child support payments of $100 in December 1986, and three $50 payments, one each in January, February, and April of 1987. Section 40-8-111, MCA, requires a parent to remain current within one year on support payments. Matter of Adoption of R.A.S. (Mont. 1984), 679 P.2d 220, 223, 41 St.Rep. 451, 454-55. After reviewing the evidence, we conclude that clear and convincing evidence supports the finding that the natural father was able to contribute to S.E.'s support but did not do so for over a year.

The court then separately concluded that "[a]doption of the minor child by Petitioner and termination of the natural

father's parental rights is in the best interests of the minor child." That conclusion is not technically correct. After the determination is made under § 40-8-111(1)(a)(v), MCA, that the natural parent's consent to the adoption is not necessary, the remaining issue is whether the adoption by the petitioner is in the best interests of the child. We order stricken that portion of the lower court's conclusion stating that "and termination of the natural father's parental rights" is in the best interest of the minor child. With that modification, we conclude that the District Court used the proper standards under our statutes.

The natural father argues that the standard for termination of parental rights under § 40-8-111(1)(a)(v), MCA, is less than the standard of proof to terminate joint custody, and that joint custody cannot be terminated under this statute. (The standard for termination of joint custody is found at § 40-4-219, MCA.) That argument is refuted by the above discussion of the clear and convincing evidence standard under this statute. Additionally, the language of § 40-8-111(1)(a)(v), MCA, is not limited to parents of any particular type of custodial status. Any parent who is able to support his child but does not do so for a period of one year forfeits the right to withhold consent to the adoption of his child.

The argument that parental rights are fundamental and that § 40-8-111, MCA, unconstitutionally allows them to be abridged without proof of a compelling state interest was not noticed for certification to the Montana attorney general as required by Rule 38, M.R.App.P. For that reason, and because the issue was not squarely presented in the briefs before this Court or before the court below, we decline to consider this argument.

6

Did the District Court improperly deny the natural father's post-hearing motions?

The natural father made post-hearing motions to alter or amend the court's judgment, for a new trial, and to stay execution of judgment until resolution of the appeal. No responsive briefs were filed within the time allowed, although the attorney for the mother and her new husband filed a brief on the day of the hearing on the motions. The natural father argues that his motions should have been granted under Rule 2, Montana Uniform District Court Rules. That rule provides:

> (a) Upon filing a motion or within five days thereafter, the moving party shall file a Brief. The Brief may be accompanied by appropriate supporting documents. Within ten days thereafter the adverse party shall file an Answer Brief which also may be accompanied by appropriate supporting documents. Within ten days thereafter movant may file a Reply Brief or other appropriate responsive documents.

> (b) Failure to File Briefs. Failure to file Briefs may subject the motion to summary ruling. Failure to file a Brief within five days by the moving party shall be deemed an admission that the motion is without merit. Failure to file an Answer Brief by the adverse party within ten days shall be deemed an admission that the motion is well taken. Reply Briefs by movant are optional and failure to file will not subject a motion to summary ruling.

> (c) Oral Argument. The Court may order oral argument sua sponte or upon application of a party.

> (d) When Motion Deemed Submitted. Unless oral argument is ordered, or unless the time is enlarged by the Court, the motion is deemed submitted at the expiration of any of the applicable time limits set forth above without supporting Briefs having been filed.

7

> If oral argument is ordered the motion will be deemed submitted at the close of argument unless the Court orders additional Briefs in which case the motion will be deemed submitted as of the date designated as the time for filing the final Brief.
> (e) In the event of conflict, the Montana Rules of Civil Procedure shall control. Time computation shall be governed by Rule 6(a), M.R.Civ.P.

The court granted the stay of execution because no responsive brief was timely filed under Rule 2. However, it refused to grant the other motions, stating that they related to its determination of the facts and the absence of a responsive brief did not change its determination of the facts. We agree with the District Court. The motion to alter or amend the judgment challenged the court's findings and conclusions. The motion for a new trial was based on alleged surprise testimony which, as discussed below, was not of enough importance to be included in the court's findings and conclusions. We hold that in this situation, the absence of answer briefs did not compel the court to grant the post-trial motions.

## IV

Did the District Court err in refusing to grant a new trial based on surprise testimony?

The "surprise testimony" was the mother's statement that S.E. was suffering from nightmares which appeared to be triggered by her natural father's visitation. The natural father argues that a psychological evaluation is necessary to prove or refute this testimony.

The factors required for a new trial based on surprise are: 1) actual surprise, 2) the facts had a material bearing on the case, 3) the court's decision mainly rested on these facts, 4) the surprise did not result from the moving party's inattentiveness or negligence, 5) the motion for new trial

8

was promptly filed, 6) the moving party acted reasonably at the time of the surprise, and 7) the result of a new trial would probably be different. Ewing v. Esterholt (Mont. 1984), 684 P.2d 1053, 1057, 41 St.Rep. 1095, 1098. After reviewing the transcript, we conclude that the testimony about the nightmares was not a pivotal factor in this case. This testimony was not even mentioned in the lower court's findings. We conclude that the natural father has failed to meet the seventh element necessary for a new trial on the basis of surprise. We hold that the lower court did not err in refusing to grant a new trial based on surprise testimony.

V

Was the mother estopped from claiming that the natural father had failed to contribute to S.E.'s support for one year?

The natural father stated this issue as whether the mother was estopped from consenting to the termination of his parental rights. Section 40-8-111, MCA, requires the mother's consent to the adoption of S.E. by her new husband, not to the termination of the natural father's parental rights. Therefore, we have restated the issue.

The natural father testified at trial that he had not made child support payments for some of the period since the dissolution because the mother had told him she wanted to "make it" on her own and that she was not worried about payments while he was unemployed. He testified that at one point he offered her $1,200 from the sale of some property, but she refused the money. He argues that, for this reason, she is estopped from consenting to termination of his parental rights for nonsupport.

The mother's testimony was that she told the natural father he must make support payments through the clerk of court, not directly to her. She also testified that she may

9

have told him that she didn't expect child support while he wasn't working, but that she did expect to receive it when he was working.

In an area of conflicting testimony such as this, the trier of fact is entitled to determine which testimony to believe. It was entirely within the court's purview to rely on the mother's testimony on this issue. We conclude that equitable estoppel did not bar the claim that the natural father had failed to pay support, although able, for a period of one year.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

10