No. 89-187

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

IN THE MATTER OF THE
ADOPTION OF: C. R. D.,

    A Minor.

APPEAL FROM:    The District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Russell K. Fillner, Judge Presiding.

COUNSEL OF RECORD:

    For Appellant:

        Joan E. Cook; Miller & Cook, Great Falls, Montana

    For Respondent:

        Virginia Bryan, Billings, Montana

Submitted on Briefs: October 13, 1989

Decided: November 30, 1989

Clerk

Filed

FILED

'89 NOV 30 AM 11 16

ED SMITH CLERK
MONTANA SUPREME COURT

Justice R. C. McDonough delivered the Opinion of the Court.

J.M.S. (father) appeals the decree of the Thirteenth Judicial District Court, Yellowstone County, granting the adoption of his natural daughter, C.R.D. (daughter) by respondents J.E.D. and A.C.D. (grandparents). The respondents are the maternal grandparents of the child and have been her legal guardians since 1985. In granting the petition, the District Court held that the father's consent to the adoption was not required because he failed to pay child support and had abandoned his daughter. We affirm the District Court's decree on the grounds that the appellant abandoned the child according to Montana law.

Appellant raises the following issues on appeal:

(1) Did the District Court err in concluding that the father's consent to the adoption was not required because he had abandoned his daughter according to Montana law?

(2) Did the District Court err in allowing evidence of the child's best interests?

(3) Did the District Court err when it concluded that the father's consent to the adoption was not required because he failed to pay for the support of his daughter?

(4) Did the District Court err in concluding that the grandparents, as appointed guardians, had the authority to consent to their own adoption of the child?

Father and V.D. (mother) were married on January 2, 1981 in Billings, Montana. The mother was eight weeks pregnant with the child at the time of the marriage. The couple lived together as husband and wife for approximately two weeks following the marriage, and separated on or about January 15, 1981. After the separation, the mother returned and resided at the home of her parents, the petitioners, where she lived when the daughter was born.

2

Mother filed for divorce on April 3rd, 1981. A decree dissolving the marriage was entered on June 22, 1981. Mother and father signed a Separation, Custody, Support, and Property Settlement Agreement on December 14, 1982. The agreement was incorporated into the decree of dissolution the following August. It established mother as the custodial parent of the child and obligated the father to pay $100.00 per month in child support. During the mother's pregnancy and at no time since the birth of the child has the father provided financial assistance to either the mother or the child.

The father was jailed on November 15, 1983 in the Yellowstone County Jail. He was later transferred to the Montana State Prison at Deer Lodge where he currently resides. Prior to this incarceration, he had two thirty minute visits with his daughter in 1982, when she was approximately nine months old. Both visits were conducted at the business establishment of the petitioner's. There have been no further personal visits between father and daughter since 1982.

In May of 1984, the mother moved from her parent's home to seek employment in another state. Not wanting to disrupt her daughter's development, she consented to her parents becoming the legal guardians of her daughter. The father was served with the guardianship petition on February 15, 1985. He failed to contest the action, and the petition was granted by default on March 19, 1985.

On February 11, 1985, and October 27, 1986, the grandparents received letters from the father. Neither letter included support for the child. The grandparents have never received any money from the father for his daughter's support.

3

The petitioners have been the sole providers of their grandaughter's daily and medical needs since her birth. The girl has become integrated into the petitioners' home. She refers to the petitioners' as her parents and the petitioner's other children as her brothers and sisters. She is also named as a beneficiary in the petitioners' will.

The father's mother, has visited with her grandaughter on five or six occasions totaling approximately 15 hours during 1985. During these visits, the father had one or two telephone visits with his daughter. There have been no telephone visits since 1985 or visits with father's mother since 1985. Father sent his daughter a Christmas card in 1987 and a birthday card in July 1988. No other correspondence has taken place between father and his daughter.

On two occasions, prior to father's incarceration, visitation had been arranged and the father failed to show up at the designated time and place. No requests for visitation with the child by either the father or the father's mother have ever been denied.

Prior to his incarceration, appellant was employed as a school bus driver from August 1980, to the fall of 1981; as an air freight attendant from June to December, 1982 and as a restaurant worker. He earned $16.00 per day as a bus driver, $900.00 per month with the freight company, and minimum wage at the restaurant. At the adoption hearing, he acknowledged he has earned in excess of $2,000.00 while an inmate at Montana State Prison. He testified that while incarcerated he gave $20.00 to one of the petitioners' sons for his daughter and opened up a savings account for her with his prison earnings. He has offered no documentary proof of these or any other payment for his daughter's support.

4

At the hearing, the father testified that in 1985 he began efforts to have the child's last name changed to his because he was not recorded as the father on the birth certificate. He testified that this change required the consent of the mother which she refused to give. Father filed a petition to change his daughter's surname to his own on February 9, 1988. The grandparents filed this action for adoption of the child on October 5, 1988. The mother has consented to the adoption. The father has not consented and has indicated his intentions to seek custody of his daughter upon his release from prison. Father's petition to change his daughter's surname was denied and the petition for adoption was granted on February 13, 1989. The natural father now has appealed the adoption decree, raising the aforementioned issues.

## I.

Montana law generally requires the filing of written consents in an adoption proceeding. Section 40-8-111(1), MCA. However, where a child has been willfully abandoned by a parent, that parent's consent is not required for the adoption. Section 40-8-111(1)(a)(iii), MCA. Abandoning a child is defined as:

> . . . leaving him under circumstances that make reasonable the belief that the parent or other person does not intend to resume care of the child in the future or by willfully surrendering physical custody for a period of 6 months and during that period does not manifest to the child and the person having physical custody of the child a firm intention to resume physical custody or to make permanent legal arrangements for the care of the child. . . . (Emphasis added.)

Section 41-3-102(3)(d), MCA. Thus, a parent's rights may be terminated, and an adoption subsequently executed without that parent's consent upon a showing of abandonment under §§ 40-8-111 and 41-3-102(3)(d), MCA. See In Re Adoption of S.E. (Mont. 1988), 755 P.2d 27, 45 St.Rep. 843; Matter of R.B (1985), 217 Mont. 99, 103-104, 703 P.2d 846, 848. Because parental rights involve a fundamental liberty interest, a judicial decree terminating such rights must be supported by clear and convincing evidence. R.B., 703 P.2d at 848, citing Santosky v. Kramer (1982), 455 U.S. 745, 753-754, 102 S.Ct. 1388, 1394-1395, 71 L.Ed.2d 599, 606; S.E., 755 P.2d at 29; Matter of Adoption of E.S.R. (1985), 218 Mont. 118, 120, 706 P.2d 132, 133.

In the case at bar, the record contains clear and convincing evidence that the natural father willfully abandoned his daughter. Father has never provided any financial support for the child. He has only visited with her personally on two occasions in 1982 and visited with her over the phone on two occasions during the year 1985. There is no evidence that the father even attempted to contact his daughter in 1983, and he failed to show up at scheduled visits in 1984. This amounts to only four personal contacts between the child and her natural parent over some eight years. Father did not contest the proceeding to name the grandparents as the child's guardians. The evidence of abandonment as found by the District Court is clear and convincing. See, Matter of M.W. (Mont. 1988), 764 P.2d 1279, 1282, 45 St.Rep. 2107, 2110.

The record does suggest that the natural father may have had some renewed interest in his daughter after his incarceration. He sent her a Christmas card in 1987 and a birthday card in July, 1988. The father testified that he began attempts to have his daughter's last name changed to

his own in 1985, and filed a petition to have her name changed in 1988. However, this evidence is insufficient to demonstrate that the father has terminated or repented from his abandonment of his daughter. "Abandonment is not an ambulatory thing the legal effects of which a parent may dissipate at will by token efforts at reclaiming a discarded child." Matter of Adoption of David C. (1978), 479 Pa. 1, 387 A.2d 804, 811; In Re Adoption of Simonton (1982), 211 Neb. 777, 320 N.W.2d 449, 454. The record clearly demonstrates that the child has been fully integrated into the home of her grandparents. It is the only home she has ever had. Considering the length of the abandonment, the father's efforts at reclaiming his daughter while incarcerated can only be characterized as token. The District Court did not abuse its discretion in concluding that the father had abandoned his daughter and had not terminated that abandonment.

## II.

The father also contends that the District Court erred in allowing evidence of the best interests of the child before there was a judicial determination terminating his parental rights. He contends that the District Court prematurely admitted best interest evidence illustrating his daughter's well adjusted and happy life with her grandparents. The father argues that such evidence is irrelevant toward the issues of abandonment and nonsupport and their effect on termination of his parental rights. Thus, father contends that the admission of this evidence before it became relevant to the adoption was prejudicial.

We disagree. Generally, "the 'best interest' test is applied under § 40-8-123 or 124, MCA, after the parental rights have been terminated, in determining whether the

7

adoption should be allowed." S.E, 755 P.2d at 29. However, once an abandonment is shown to have existed by clear and convincing evidence to the extent shown here, the evidence is sufficient to support the conclusion of the court, and if admission of evidence relating to best interest of the child is in error, such error would not rise in gravity so as to overturn the findings and conclusions of the court as a result of a bench trial.

## III. and IV.

The natural father also argues that the District Court erred in concluding that his consent was not required for the adoption because 1) he failed to pay support for his daughter; and 2) the grandparents, as appointed guardians, had the authority to consent to their own adoption of the child. Nonsupport is a ground for excusing the consent requirement for an adoption under § 40-8-111(1)(a)(v), MCA. However, the District Court need only find one of the substitutes for consent enumerated by the statute in order to proceed with the adoption. Section 40-8-111, MCA. In light of the overwhelming evidence of abandonment in this case, we need not address the sufficiency of the evidence as it relates to nonsupport. Furthermore, because the natural father's consent was excused when his parental rights were terminated, we need not discuss the guardians' authority to consent because consent was no longer required to complete the adoption.

We find that there is clear and convincing evidence in the record to support the District Court's finding that the father abandoned his daughter. The District Court did not abuse its discretion in terminating the father's parental rights and granting the grandparents' petition for adoption.

8

AFFIRMED.

_____
                                         Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices