No. 89-253

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

IN RE THE MATTER OF THE ADOPTION OF
R.M., S.P.M., and R.M., minor children.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William Speare, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Kristine Davenport, Missoula, Montana

For Respondent:

Brad Arndorfer, Billings, Montana

Submitted on Briefs: Dec. 1, 1989

Decided: January 18, 1990

Filed:

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This appeal involves an adoption proceeding held in the Thirteenth Judicial District Court, Yellowstone County. Appellant, R.E.M, the natural father and respondent below, appeals the January 13, 1989 order and January 31, 1989 decree terminating his parental rights and granting the adoption of his children by their stepfather. The District Court ruled that the natural father's consent was not required for the adoption because he had failed to provide support to his children pursuant to a court ordered decree of dissolution. We affirm.

The natural father raises the following issues on appeal:

1) Did the District Court err and abuse its discretion in finding that the natural father's consent to the adoption of S.P.M. was not required because the natural father did not contribute to the support of all three children during a period of one year before the filing of the petition for adoption?

2) Did the District Court err and abuse its discretion in finding that it was in the children's best interests to allow the stepfather to adopt them?

The natural father and the mother, C.R.S., were married in August of 1980. Their oldest child, R.R.M., is the

mother's child adopted by R.E.M. and is now ten years old. The other two children of the marriage are S.P.M., age eight, and R.C.M., age five. During their marriage, the natural father ran a business in Billings called Minute Man Pizza. Testimony indicated that profits from the business provided the family with approximately $1,000 per month.

The natural father testified that approximately August 9, 1985, his wife sent all the children from Billings to her parents house in Missoula. The natural father went to Missoula, took his son S.P.M. back from his wife's parents, and returned to Billings with him. On August 19, 1985, the natural father filed a Petition for Dissolution of Marriage in the District Court of the Thirteenth Judicial District, Billings, Montana. The petition requested that the natural father receive custody of all the children. While the determination of custody in the dissolution was still pending, S.P.M. resided with him in Billings, Montana and the other two children resided with their mother, also in Billings. During this time, Court Services Domestic relations department conducted a study and recommended on January 22, 1986 that the parties have joint custody of all the children with the wife as the primary residential custodian. The parties' testimony conflicts as to whether the natural father knew the contents of this report in January of 1986.

That same month, with the dissolution proceeding still pending, the natural father left Billings with S.P.M. and moved to Kennewick, Washington. The natural father did not have any further contact with his attorney concerning the dissolution case, he testified that he did not think the dissolution would proceed in his absence and that he told his attorney to "let the matter slide." The natural father also told his attorney that he was considering moving to Mazatlan, Mexico. He did not tell his attorney of his true whereabouts, nor did he tell or inform the mother as to his leaving or his whereabouts.

On March 13, 1986, the natural father filed a petition for dissolution in Lincoln County, Washington, in which he requested custody of the three children. The mother was served by publication and did not appear. A decree of dissolution was entered by default in Washington on July 16, 1986, awarding custody of the children to the natural father.

On November 13, 1986, the Montana dissolution proceeding was heard in the natural father's absence. The motion for continuance made by the natural father's attorney at that time on the grounds that he was unable to contact his client was denied.

The trial court granted the mother's request for custody of the three minor children and ordered the natural father to pay $100.00 per month, per child as child support. A copy of

the decree of dissolution was served upon the natural father's attorney. The natural father alleges that he did not receive a copy of the decree and notice of his support obligation because his attorney was unable to locate him.

Meanwhile, in Washington, the natural father opened up a business similar to the one he had operated in Billings. The evidence indicates that he and S.P.M. occasionally visited the natural father's parents in the Missoula area, but no contact was made with the mother or other children. In November of 1987, the natural father was arrested in Washington and charged with custodial interference pursuant to § 45-5-304, MCA. The natural father was forced to close down his business in Washington in order to answer the charges in Montana. After the natural father's arrest, S.P.M. was placed in the custody of the mother. The charges of custodial interference were dismissed because insufficient facts were alleged in the initial affidavit to support the filing of the information. The natural father testified that after his extradition to Montana was the first time he was aware of a decree of dissolution ordering him to pay child support.

On May 9, 1988, R.H.S., the mother's new husband, filed a petition for adoption of the three minor children. The petition alleged that the natural father's consent to the adoption was not required because he had not contributed to

5

the support of the minor children for a period of one year before the filing of the petition and that he was able to do so. See § 40-8-111(1)(a)(v), MCA.

On January 13, 1989 the District Court entered its findings of fact and conclusions of law. The court terminated the natural father's parental rights for failure to support based on § 40-8-111(1)(a)(v), MCA, and also found that the adoption was in the best interests of the children and entered a decree granting the adoption on January 31, 1989. The natural father now appeals.

## I.

The primary issue in this case involves the District Court's application of the adoption statute, § 40-8-111, MCA. The statute generally requires the filing of written consents in an adoption proceeding. Section 40-8-111(1), MCA. However, consent for the adoption is not required from a father or mother:

> (v) if it is proven to the satisfaction of the court that the father or mother, if able, has not contributed to the support of the child during a period of 1 year before the filing of a petition for adoption. . . .

Section 40-8-111(1)(a)(v), MCA. Thus, a parent's rights may be terminated, and an adoption decreed without that parent's consent upon a showing of non-support under § 40-8-111(1)(a)(v), MCA.

6

Parental rights involve a fundamental liberty interest, and a judicial decree terminating such rights must be supported by clear and convincing evidence. Matter of the Adoption of C.R.D. (Mont. 1989), ___ P.2d ___, ___, 46 St. rep. 1979, 1982; Matter of R.B. (1985), 217 Mont. 99, 103-104, 703 P.2d 846, 848, citing Santosky v. Kramer (1982), 455 U.S. 745, 753-754, 102 S.Ct. 1388, 1394-1395, 71 L.Ed.2d 599, 606. Persons faced with loss of their parental rights have a critical need for procedural protections, therefore when parental rights are judicially terminated the parents must be provided with fundamentally fair procedures. Santosky, 455 U.S. at 753-754.

The natural father maintains, and the District Court found, that the natural father supported S.P.M. during the time they spent in Washington. This support continued up until the natural father's arrest four months prior to filing of the petition. Because he did not fail to support S.P.M. for a year prior to filing of the petition, the natural father contends that his consent is necessary for the adoption of S.P.M.

This contention is without merit. Parents are obligated to support their children. Sections 40-6-211, 40-6-214, MCA. See also §§ 41-3-101, 41-3-102(3), MCA. Absent a court order releasing him of this responsibility or altering this obligation the natural father was obligated to support all

7

three children. He failed to meet this obligation. Also, there is no authority in Montana that supports crediting the natural father for the in-kind support provided for S.P.M. against the entire support obligation for all three children in this case. In our decision in In re Adoption of E.S.R. (1985), 218 Mont. 118, 706 P.2d 132, we did hold that in spite of a court order requiring husband to pay monthly child support, a subsequent oral agreement between the parties for each to support one child was valid and no support payments were necessary. Here, there is no evidence of such an oral agreement. Furthermore, any payment of support must first be applied to satisfy the earliest arrearage before it is applied to the support owed during the year before filing of the petition for adoption. In re Adoption of R.A.S. (1984), 208 Mont. 438, 443-444, 679 P.2d 220, 223. Thus, under this rationale, even if the District Court had considered the support provided S.P.M. in Washington as a substitute for an actual credit of child support payments, applying the monetary equivalent of this in-kind support over the obligation to support all three children would still create an arrearage for all the support payments owed. And finally, we endorse the District Court's finding that:

> . . . where one parent is legally required to pay for the support of two or more minor children the residential custody of whom has been judicially awarded to the other parent, the payor parent should not be able to prevent the spouse of the

8

custodial parent from adopting all the minor children by providing support specifically to one of the children even if the payor parent remains current in child support to that minor child within one year immediately preceding a petition for adoption.

(Order of January 13, 1989, Finding No. 8.) Allowing parents to choose to support some of their minor children while neglecting others is contrary to the spirit of the law. Applying the equivalent of the support provided S.P.M. over the obligation to support all three children, the evidence of non-support over the required time is clear and convincing.

The natural father also maintains that the District Court did not consider the principles of Santosky when it terminated his parental rights. He contends that he was denied due process because he did not receive reasonable notice of his duty to pay child support.

We disagree. Due process requires that a party have notice of an action or judgment and a reasonable opportunity to be heard. In re Marriage of Robbins (1985), 219 Mont. 130, 711 P.2d 1347, 1352. Here, service of the decree of dissolution constituted sufficient notice of the natural father's obligation to pay child support and did not deprive him of his due process rights, particularly where there was nothing in the record to indicate that the natural father's original attorney was relieved before or after the child support order was entered, and where he failed to keep in

9

contact with his attorney after he instituted the divorce proceedings. See e.g. Bennet v. Bennet (N.C.App. 1984), 322 S.E.2d 439, 440. Furthermore, at all times that the natural father resided with S.P.M. in Washington he knew of the whereabouts of his former wife and other two children. He made no effort to provide for the support of the other two children during his absence. If he had he would have been apprised of the divorce decree and his obligation to pay support. Service of the decree upon his attorney is all the notice that due process requires in this case, and if appellant failed to receive actual notice of the support obligation it was the result of his own lack of diligence or possibly his own intentional acts.

The natural father also contends that his arrest and extradition to Montana for custodial interference forced the closure of his new business in Washington. He testified that upon returning to Montana to face the charges he was basically indigent and unemployed, except for some part time work, during the four months immediately preceding the filing of the adoption petition. The natural father maintains that the District Court erred in finding that his consent was not required for the adoption due to his failure to support because he did not have the ability to pay as ordered by the divorce decree. See § 40-8-111(1)(a)(v), MCA.

We disagree. Although the evidence does indicate that it would have been difficult for the natural father to pay the full amount of child support during this time, no evidence exists that the natural father was totally unable to pay any support at all during the one year period prior to the adoption. Indeed, when a parent is unable to pay his or her entire support obligation because of financial hardship, that parent is still obligated to make a diligent effort to comply with the decree and make whatever payments are possible under the circumstances. See e.g., In re Marriage of Smith (1984), 214 Mont. 66, 692 P.2d 1221. Otherwise, the payor parent should move the court for a modification of the support order in the divorce decree based upon a change of circumstances. See § 40-4-208(2)(b)(i), MCA. Here, there is no evidence that the appellant made any effort at all to comply nor did he move for a modification of the support order. The evidence is clear and convincing that he was able to make at least some payment at some time during the one year preceding the filing of the petition and that no payments were made during or prior to this time. We see no abuse of discretion by the District Court in finding that the appellant was able to pay at least a minimal amount of child support and failed to do so.

11

II.

Appellant also contends that the District Court abused its discretion in finding that it was in the children's best interests to allow the stepfather to adopt them. He contends that the stepfather did not present clear and convincing evidence that it was in the children's best interests for the adoption to be granted.

The natural father misstates the appropriate standard of review of the "best interest" question. The "clear and convincing evidence" standard of review applies only to the termination of parental rights. Once this Court has reviewed whether termination of parental rights is supported by clear and convincing evidence, we need only examine whether the conclusion that the adoption is in the children's best interests is supported by substantial evidence. See e.g. In re Adoption of J.M.G (1987), 226 Mont. 525, 736 P.2d 967.

Here, the record contains substantial evidence supporting the conclusion that the adoption was in the children's best interest. Specifically, this evidence includes the June 8, 1988 report from the Department of Family Services, wherein Larry G. Burns, a Family resource Specialist for the Department, reports that S.P.M. related to him that he would like his stepfather to be his father. (report of the Department of Family Services, June 8, 1988, p.6) The stepfather testified that he thought he could give

12

the children a good life and love them, and he testified that he concurred in the recommendations and statements about the home life of the family in the report, which were over-whelmingly favorable toward the adoption. Because there is substantial evidence supporting the conclusion of the Court that the adoption was in the children's best interests, the District Court did not abuse its discretion.

AFFIRMED.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

13