No. 92-554

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

---

IN THE MATTER OF L.E.B.,

a minor child.

---

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Barbara E. Bell, Bell and Marra,
Great Falls, Montana

For Respondent:

William K. Hammer and Gary S. Deschenes,
Deschenes Law Office, Great Falls, Montana

---

Submitted on Briefs: March 4, 1993

Decided: July 29, 1993

Filed:

_____
Clerk

FILED

JUL 29 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Justice Terry N. Trieweiler delivered the opinion of the Court.

The mother of L.E.B., a minor child, appeals from an order of the District Court for the Eighth Judicial District, Cascade County, which terminated the mother's parental rights and granted the child's grandparents' petition for adoption.

We affirm.

The issue on appeal is restated as follows:

Did the District Court err when it terminated the mother's parental rights and concluded that her consent to the adoption was not necessary?

L.E.B. was born on July 10, 1981, when his mother, Donna, was seventeen years old. Although the natural father's identity is known, he has never been involved in the care or support of L.E.B., is not a party to this lawsuit, and does not challenge the court's termination of his parental rights.

With the exception of a few brief periods when he resided with his mother, L.E.B. has lived with his maternal grandparents in Great Falls since birth. In 1984, when L.E.B. was three years old, Donna enlisted in the Montana Air National Guard. At Donna's request, and pursuant to National Guard regulations which require single parents to name a guardian for their minor children during the term of enlistment, the child's grandparents petitioned the trial court to appoint them as co-guardians of L.E.B. This request was granted on August 10, 1984.

After spending approximately one year in the National Guard, Donna transferred to the Army and was subsequently discharged on

2

October 11, 1985, for medical reasons. Without informing her parents of her discharge, Donna moved to California where she has resided ever since. At that time, she did not terminate the guardianship nor seek to have L.E.B. returned to her care.

In June 1987, Donna's parents took L.E.B. to California to visit her for the summer. L.E.B. remained in California with Donna and attended first grade during the 1987-88 school year.

After discovering that L.E.B. was having serious difficulties in school due to dyslexia, his mother testified that she and her parents agreed that L.E.B. would spend the next three years with his grandparents in order to take advantage of a special education program available in the public school system in Great Falls. The grandparents, however, deny that there was a discussion regarding a time limit on L.E.B.'s return to Montana. In fact, they testified that, in addition to L.E.B.'s problems with dyslexia, they brought him back to Montana due to concerns about Donna's drinking and the care L.E.B. was receiving.

Donna visited L.E.B. during the summer and Christmas of 1989, but had virtually no other contact with L.E.B. up until July, 1991. Furthermore, although gainfully employed throughout much of the time that her parents were caring for L.E.B., Donna never provided financial support for L.E.B. other than occasional gifts and clothing.

During the summer of 1991, when Donna arrived in Great Falls with the intention of returning L.E.B. to California, her parents refused to release L.E.B. to her custody, citing their rights as

3

guardians. As a result, Donna petitioned the District Court on August 6, 1991, for custody and termination of the guardianship. Her parents countered with a petition to terminate Donna's parental rights and to adopt L.E.B.

A non-jury trial was held on April 9, 1992 and July 2, 1992. At the conclusion of the trial, the court granted the grandparents' petition and allowed them to adopt L.E.B., thereby terminating Donna's parental rights. In its Findings of Fact and Conclusions of Law, issued on October 5, 1992, the court found that Donna had no contact with L.E.B. since the summer of 1989, had not provided financial support for him since 1984, and would not be able to provide L.E.B. with a stable and loving home environment. The court also found that Donna's testimony was not credible due to numerous inconsistencies and her "history of lies and deceit." The court concluded that it would be in L.E.B.'s best interests to be adopted by his grandparents. That conclusion is not contested on appeal. The court further determined that his mother's consent to the adoption was not required due to her failure to provide support for him during the year preceding the filing of the petition, and her willful abandonment of L.E.B.

From the court's Findings of Fact, Conclusions of Law, and Decree, Donna appeals.

Did the District Court err when it terminated Donna's parental rights and concluded that her consent to the adoption was not necessary?

4

Citing *In the Matter of Aschenbrenner* (1979), 182 Mont. 540, 597 P.2d 1156, Donna contends that, since the guardianship was still in effect, the court was required to find abuse and neglect before terminating her parental rights in favor of a non-parent. She argues that the court improperly considered only the adoption statute without considering the statutes governing guardianship, jurisdiction of child custody, and termination of the parent-child relationship.

However, the grandparents' petition for adoption was commenced pursuant to the provisions of the Uniform Adoption Act found at §§ 40-8-101 through -136, MCA. On appeal, this Court must consider whether the trial court properly found that the statutory criteria for adoption of a minor, without the consent of a parent or parents, were satisfied. The authority Donna relies on involved an attempt to terminate parental rights through a guardianship proceeding, and this Court held that such a proceeding was not a proper means to terminate a parent's constitutional right to custody of his or her children. *Aschenbrenner*, 597 P.2d at 1164. In this instance, the guardianship was not the basis for terminating Donna's rights.

We have recognized on several occasions that there is some overlap in the statutes pertaining to parent-child relationships and have cautioned the district courts to identify and adhere to the proper procedures and standards to be used in the proceedings before them. *Guardianship of Nelson* (1983), 204 Mont. 90, 663 P.2d 316;

5

*Aschenbrenner*, 597 P.2d at 1156. Here, the proceeding initiated by Donna's parents was an adoption proceeding, and the record shows that the court properly considered the applicable criteria and procedures for the adoption of minors in the absence of parental consent.

Generally, before the District Court can allow the adoption of a child there must be parental consent. Section 40-8-111(1)(a), MCA. However, the statute provides, in pertinent part, that an adoption of a minor can be judicially decreed without the consent of the parent(s) "if it is proven to the satisfaction of the court that the father or mother, if able, has not contributed to the support of the child during a period of 1 year before the filing of a petition for adoption," or if it is shown that the parent(s) "willfully abandoned the child, as defined in 41-3-102(3)(d)." Sections 40-8-111(1)(a)(iii) and (v), MCA. Once a final decree of adoption is entered, the natural parent(s) are thereafter relieved of all parental responsibilities and have no rights to the adopted child. Section 40-8-125, MCA.

Turning first to the question of support, we have held that in order for the court to find that a parent's consent is not necessary to terminate parental rights and allow an adoption, there must be clear and convincing evidence that the parent has not contributed to the support of the child for one year and was able to do so. *Adoption of J.B.T.* (1991), 250 Mont. 205, 207, 819 P.2d 178, 179.

6

In this instance, the District Court found that Donna had not contributed to L.E.B.'s support during a period of one year prior to the filing of the petition for adoption. A review of the record demonstrates that the testimony was undisputed that she had not contributed to L.E.B.'s support at any time during the guardianship, and specifically, had not provided support from August 1990 through August 1991, the year preceding the adoption petition. By her own admissions, she has been employed as an accountant since 1989, and her ability to provide support for L.E.B. is not an issue. She contends, however, that the guardianship order did not contain support provisions, and that her parents never requested support from her. Furthermore, she argues that she provided full support for L.E.B. during the times that he was in her custody, paid for his transportation to and from California for visits, covered him on her health insurance plan, and gave him gifts, school clothes, and spending money.

We note first that this Court recently held that "a parent's obligation to support his child is not dependent on an order of the Court . . . . There is no requirement under § 40-8-111(1)(a)(v), MCA, that child support be court ordered." *Adoption of D.J.V.* (1990), 244 Mont. 209, 213, 796 P.2d 1076, 1078. Moreover, we have repeatedly held that providing occasional articles of clothing or other gifts does not satisfy a parent's obligation to provide financial support. *Adoption of K.L.J.K.* (1986), 224 Mont. 418, 421, 730 P.2d 1135, 1137; *Adoption of S.L.R.* (1982), 196 Mont. 411, 414-15, 640

7

P.2d 886, 888. Donna's health insurance only covered L.E.B. when he resided in California. It is uncontroverted that L.E.B. has resided with his grandparents in Great Falls since May 1988, and the evidence clearly demonstrates that L.E.B.'s medical bills have always been paid for by his grandparents' health insurance, rather than his mother's. Finally, it is undisputed that Donna did not see L.E.B. during the relevant year in question. Even if payment of travel expenses could be construed as a form of support, there were no such expenses incurred during this time.

We conclude that there was clear and convincing evidence to support the District Court's findings that Donna failed to support L.E.B. although financially able to do so. Therefore, we do not need to evaluate the evidence of abandonment, which is a separate and independent basis for allowing adoption without parental consent. The trial court need only find one of the statutorily enumerated substitutes for consent in order to proceed with an adoption. *Adoption of C.R.D.* (1989), 240 Mont. 106, 782 P.2d 1280.

We hold that the court did not err when it terminated Donna's parental rights and allowed her parents to adopt L.E.B. on the grounds that Donna's consent to the adoption was not necessary due to her failure to provide support. The order of the District Court is affirmed.

_____
Justice

8

We concur:

_____
            Chief Justice

_____

_____

_____
            Justices

9

July 29, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Barbara E. Bell
Bell & Marra
9 3rd Street N., 201 Liberty Center
Great Falls, MT 59401

Gary S. Deschenes
Attorney at Law
P. O. Box 3502
Great Falls, MT 59403-3502

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy