FILED

November 10 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0273

DA 15-0273

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 316

In Re the Adoption of:

P.T.H.,

    A Minor Child.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Silver Bow, Cause No. DA-14-12
Honorable Kurt Krueger, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Daniel R. Sweeney, Sweeny Law Firm, Butte, Montana

    For Appellee:

    Kristine M. Akland, Matrium Law Group, Missoula, Montana

Submitted on Briefs:  October 14, 2015
Decided:  November 10, 2015

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Petitioner B.C. appeals from the District Court's Findings of Fact, Conclusions of Law and Order filed April 16, 2015, denying his petition for adoption of P.T.H. We affirm.

¶2    We restate the issues for review as follows:

Issue 1: Whether the District Court erred by giving full faith and credit to the parenting plan and child support order entered by the Superior Court of California.

Issue 2: Whether the District Court erred by refusing to terminate the parental rights of the father.

## BACKGROUND

¶3    P.T.H was born in 2008 and is the natural son of T.C. (mother) and R.H. (father). The parents were divorced in California in 2009 but then remarried each other. They subsequently separated and divorced a second time. The parties agreed to a parenting plan that was approved by the Kern County (California) Superior Court. That agreement specified that R.H. did not have to pay any child support, and that provision was adopted by the Kern County Court as part of its final order. Since that time neither T.C. nor R.H. has sought to modify the parenting plan or child support provision in the California court's order.

¶4    In 2010 T.C. moved to Montana and is now married to B.C., who is the petitioner for adoption in this case. B.C.'s petition, filed in 2014, seeks to terminate R.H's parental rights so that B.C. can adopt P.T.H. The sole basis for the petition to terminate R.H.'s parental rights is the allegation that R.H. is an unfit parent because he failed to pay child

support during the year prior to the filing date of the petition. R.H. responded to the petition, consented to the jurisdiction of the Montana court, but also requested that the District Court modify the California parenting plan. The District Court bifurcated the parenting plan issues pending resolution of the adoption case. After a hearing at which T.C., R.H. and R. H.'s mother testified, the District Court found that there was no basis for terminating R.H.'s parental rights and dismissed the petition.

¶5 The District Court reviewed the 2010 California court order and found that it provided that "child support is set at zero," based upon the stipulation of the parties. The District Court found that neither party had sought to modify that order. The District Court found that during the four years prior to the present petition, R.H. made three payments to T.C. that he noted as "child support" and that he sent periodic packages of clothes and presents for P.T.H. The District Court also found that R.H. has generally been employed during the four years prior to the petition, working in construction for wages between $11.00 and $15.00 per hour.

¶6 The District Court concluded that the United States Constitution (Article IV, Section 1) and Montana law (§§ 40-5-149 and 40-4-210(2), MCA) require that "full faith and credit" be given to child support orders entered by courts in other states, including the order of the California court in this case. The District Court concluded that the child support order from the California court must be recognized and enforced in Montana unless modified.

¶7 In Montana a child cannot be adopted without the consent of the natural parent. Section 42-2-301, MCA. Parental consent to an adoption is not required if there is a

3

judicial determination that the parent is unfit. Section 42-2-607(2), MCA. The District Court concluded that in this case the only ground for R.H.'s alleged unfitness is based upon § 42-2-608(1)(c), MCA, which provides that the court

> may terminate parental rights for purposes of making a child available for adoption on the grounds of unfitness if it is proved to the satisfaction of the court that the parent, if able, has not contributed to the support of the child for an aggregate of 1 year before the filing of a petition for adoption.

The District Court noted the factors for determining whether a parent is "able" to support the child, as set out in *In re the Adoption of C.R.N.,* 1999 MT 92, ¶ 15, 294 Mont. 202, 979 P.2d 210.

¶8     The District Court noted that under Montana law, when there is no child support order in place, a parent still must support his or her child or, again, risk being found unfit for purposes of an adoption. *In re the Adoption of R.M.*, 241 Mont. 111, 115, 785 P.2d 709, 711 (1990). The District Court concluded that because R.H. had been "able" to make child support payments for the year prior to the petition, he risked being declared unfit except for the unique facts of this case:  that there was an existing court order providing for "zero" child support. The District Court concluded that "[i]f another state's court order releases a parent of the responsibility to pay child support, this Court cannot later disregard that order and mandate that child support should have been paid. . . . . Such an act would disregard the Full Faith and Credit clause of the U.S. Constitution and other Montana laws."

¶9     The District Court then concluded that there were no grounds for finding R.H. to be an unfit parent, and refused to terminate his parental rights. Further, the District Court

4

ordered that the parties' child support obligations be re-determined under the Montana Child Support Guidelines, and that the 2010 California order would be followed until that re-determination was completed. B.C. appeals.

## STANDARD OF REVIEW

¶10 This Court reviews a district court's findings of fact to determine whether they are clearly erroneous, and conclusions of law to determine whether they are correct. Because the termination of parental rights involves a fundamental liberty interest, a decree terminating those rights must be supported by clear and convincing evidence. *See generally In re the Adoption of C.R.N*, ¶ 7.

## DISCUSSION

¶11 *Issue 1: Whether the District Court erred by giving full faith and credit to the parenting plan and child support order entered by the Superior Court of California.*

¶12 The United States Constitution requires that "[f]ull faith and credit shall be given in each state to the . . . judicial proceedings of every other state." U.S. Const. art. IV, § 1. The requirement to give full faith and credit is "exacting" and a state court judgment qualifies for recognition "throughout the land" for claim and issue preclusion purposes. *Baker v. GM*, 522 U.S. 222, 233, 118 S. Ct. 657, 663-64 (1998). Federal law requires that each state "shall enforce according to its terms a child support order" from the court of another state. 28 USC § 1738B. In this case it is not contested that the Superior Court of California had full jurisdiction to enter the 2010 order setting the amount of child support owed by R.H. at "zero," and it is not contested that neither party has since obtained a modification of that order.

5

¶13    Montana law requires:

> A court of this state shall accord full faith and credit to an order issued by another state and consistent with this chapter that enforces a child custody determination by a court of another state unless the order has been vacated, stayed, or modified by a court having jurisdiction to do so under 40-7-105, 40-7-107 through 40-7-110, 40-7-112, and part 2 of this chapter.

Section 40-7-313, MCA.  *See also* § 40-5-186, MCA, providing for registration and enforcement of support orders.  Section 40-4-210(2), MCA, provides that a Montana court "shall recognize and, if petitioned to do so, enforce according to its terms a child support order issued by a court or administrative agency of another state if the order was made consistent with the full faith and credit provisions of 28 USC 1738B."  Both federal and Montana law allow Montana courts to modify child support orders issued by other state courts upon meeting the proper standards.  Section 40-4-210(6), MCA.  Therefore, the California order setting the support obligation at "zero" has the same legal effect as if that order had been issued by a district court in Montana, but its provisions may be modified pursuant to new proceedings in this State.

¶14    Petitioner's argument is based upon the premise that this is a case in which there was "no court-ordered support order" and therefore R.H. nonetheless had an obligation to provide support.  *Adoption of R.M.*, 241 Mont. at 115, 785 P.2d at 711.  However, there clearly was a court order in this case setting the amount of support at zero.  As this Court recognized in *Adoption of R.M.*, 241 Mont. at 115-16, 785 P.2d 709, the parental support obligation exists "absent a court order releasing . . . this responsibility or altering this obligation . . . ."  Therefore, we hold that the District Court properly concluded that it was

6

required to recognize the 2010 order of the California court which set R.H.'s support obligation at "zero."

¶15    *Issue 2: Whether the District Court erred by refusing to terminate the parental rights of the father.*

¶16    As previously noted, a child may be adopted only with consent of the natural parents, § 42-2-301, MCA, but consent is not required if the parental rights have been terminated, § 42-2-607, MCA. R.H. has not consented to the proposed adoption, and the only ground for declaring him to be unfit is based upon § 42-7-608(1)(c), MCA. That section allows, but does not require, a district court to terminate a parent's rights to his child for purposes of adoption if it is "proven to the satisfaction of the court that the parent, if able, has not contributed to the support of the child for an aggregate period of 1 year before the filing of a petition for adoption." *In re the Adoption of D.J.V.,* 244 Mont. 209, 213, 796 P.2d 1076, 1078 (1990).

¶17    As the District Court here recognized, this is a different situation because there is a support order in place that currently governs the obligations of the parents. T.C., the mother, consented to that order. Recognizing it as a controlling order in this case is entirely consistent with the requirements of Full Faith and Credit, and with the obligation of a parent to comply with a support order if one is entered. Parents often agree and courts often order that there be no child support, such as when the parents share equally in custodial time with the child. Allowing termination of parental rights in such a situation after a year has gone by is clearly a trap for the unwary parent and would undermine the authority of the district courts to set the amount of support in each case.

7

¶18 Termination of parental rights impacts the parent's fundamental liberty interest, and a decree terminating those rights must be supported by clear and convincing evidence. A parent cannot be declared unfit and have his or her child adopted by another person after complying with a court order setting the amount of support due.

¶19 The order of the District Court is affirmed and this matter is remanded for further proceedings regarding proposed modification to the parenting plan.

/S/ MIKE McGRATH

We Concur:

/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA