No. 80-391

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

IN THE MATTER OF THE
ADOPTION OF S. L. R.,
a minor child.

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Ravalli, The Honorable
John S. Henson, Judge presiding.

Counsel of Record:

For Appellant:

Smith, Connor & Van Valkenburg, Missoula, Montana

For Respondent:

Terry Sehestedt, Missoula, Montana

Submitted on Briefs: May 13, 1981

Decided: JAN 28 1982

Filed: JAN 28 1982

Thomas J. Kearney
                    Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from an order issued by the District Court, Ravalli County, denying appellant's petition for the adoption of SLR, a minor child.

Appellant, the child's stepfather, raises two issues on appeal. He argues first that the trial court erred in finding that the natural father, by providing several small articles of clothing, and by paying debts unrelated to the child, had "contributed to the support" of the child. The stepfather's second argument is that the trial court erred in finding that the natural father was "unable" to provide additional support for the child.

SLR was born on June 7, 1976. The father and mother of SLR were divorced on March 31, 1978, and custody of the child was awarded to the mother. The decree also provided that the father have reasonable rights of visitation and that he pay the sum of $100 per month for the support, care and maintenance of the child. The support payments were to start on April 5, 1978.

The mother married the appellant on November 2, 1979. Since this marriage, the child has resided with the mother and stepfather at their home in Stevensville, Montana. The father has failed to make any child support payments since February 9, 1979, although he does claim to have given the child "a couple of blouses . . ." and other small items of clothing. During this time, the father has only been sporadically employed, has earned only a very marginal income, has remarried, and has voluntarily incurred substantial additional debts.

On February 25, 1980, the stepfather filed a petition for the adoption of the child in Ravalli County District Court. The mother consented to this petition, and the

Montana Department of Social and Rehabilitation Services waived the investigation required under section 40-8-122, MCA. The petition alleged that the consent of the father was not necessary due to the fact that the father had willfully abandoned the child and had not contributed to her support while able to do so for one year prior to the filing of the petition. See section 40-8-111(a)(iii) and (v), MCA.

During the hearing, the father stated that he had provided for the support of his new wife's child from a previous marriage for a limited time. The father further admitted that he had paid the entrance fee for the bull-riding competition in several rodeos during the summer of 1979. These fees may have amounted to as much as $100. The record also reveals that a substantial amount of the father's present indebtedness was incurred after the dissolution of his first marriage.

The trial court, after the hearing, denied the petition. In its findings of fact, the trial court found: (1) that the natural father "contributed to the support of [SLR] by providing several articles of clothing for the child and by assuming responsibility for, and making payments on debts incurred by the natural parents during their marriage"; and (2) that the father's indebtedness, new family, and his failure to obtain steady employment have rendered him unable (within the definition of section 40-8-111(a)(v), MCA) to provide "additional" support for SLR. This appeal followed.

Section 40-8-111, MCA, is controlling on these issues. It sets forth a general rule and exceptions. The general rule is that to consider a petition for adoption the court must first determine that <u>both</u> natural parents (if living)

-3-

consent to the adoption. But the exceptions contained in section 40-8-111, MCA, are also important on the question of parental consent. One such exception states that the consent of a natural parent is not required:

> ". . . if it is proven to the satisfaction of the court that the father or mother, if able, has not contributed to the support of the child during a period of 1 year before the filing of the petition for adoption." Section 40-8-111(1) (a)(v), MCA.

From the express wording of this statute, as well as the cases interpreting it, it is clear that section 40-8-111(1)(a)(v), MCA, sets forth a two-part test: First, the court must determine whether the nonconsenting parent has contributed to the support of the child. Second, the court must determine whether the nonconsenting parent had the ability to contribute to the child's support. Because strict compliance with section 40-8-111, MCA, is required before the court can consider the adoption on its merits, the petitioner must be able to show that the terms of the statute have been met. In Re Adoption of Biery (1974), 164 Mont. 353, 522 P.2d 1377.

The trial court's determination that the father contributed to the support of SLR is based upon two factors: (1) the fact the father had, during the preceding year, given the child "a couple of blouses and a few things like this," and (2) the fact that the father had made payments toward certain debts, some of which were incurred after the divorce.

The natural father contends, and the trial court ruled, that the nonconsenting father contributed to the support of the child by providing several small articles of clothing. We do not agree. In Matter of Adoption of Smigaj (1975), 171 Mont. 537, 560 P.2d 141, this Court, construing "support" as used in section 40-8-111(1)(a)(v), stated:

-4-

". . . we have no difficulty in construing the plain meaning of the words in the context of the consent statutes as referring to the 'financial support that a parent owes a child.'" (Emphasis added.) 560 P.2d at 143.

Here, the father was under a duty, pursuant to the dissolution decree, to provide child support payments of $100 per month. It is undisputed that the father failed to pay any child support for over a year before the petition for adoption was filed. The "plain meaning" approach of Smigaj requires that the father contribute financial support to the child. The failure to provide financial support cannot be cured by giving the child several articles of clothing.

Similarly, the noncustodial parent cannot satisfy his obligation to provide financial support by incurring or paying debts which are unrelated to the child. The express terms of the statute refer to "support that a parent owes a child." Smigaj, supra. Here, the debts paid by the father were not related to the support of the child, and much of the debt had been incurred after the dissolution of his first marriage. The record clearly shows that the father made no financial contribution to the support of the child for over a year. This requires us to vacate the finding of the trial court that the gift of clothing and payment of debts by the father constituted "support" as that term is used in section 40-8-111, MCA.

In the present case, the father had no valid reason for failing to make even one child support payment during the entire year preceding the filing of the petition. He suffered no physical or mental impairment during that time, and he was possessed of skills that would have made him employable (carpentry, laborer, operating heavy equipment). The father voluntarily chose a lifestyle inconsistent with his parental support obligations. That he had a right to chose such a

lifestyle is conceded. That he had a legal right to prevent the adoption of his child, however, is not consistent with his voluntary failure to contribute to the child's support. In the words of the California court:

> "A statute should not be interpreted in favor of a father who seeks the benefit of parental rights but shuns the burden of parental obligations." In Re Burton's Adoption (1956), 147 Cal.App.2d 125, 305 P.2d 185, 191.

It was the burden of the stepfather to show that the father was able to but failed to provide support for the child during the one-year period immediately preceding the filing of the petition. In Re Adoption of Challeen (1976), 172 Mont. 362, 563 P.2d 1120. In Challeen, the Court found that the petitioner had failed to meet this burden. In that case, the natural father had one of his eyes surgically removed, had been confined in the state prison, and had attended college during the time that he was alleged to have been "able" to contribute to the support of the child. Similarly, in the recent case of In Re Adoption of T.G.K. & J.P.K. (1981), ___ Mont. ___, 630 P.2d 740, 38 St.Rep. 1030, it was shown that the father had been incarcerated in the state prison and therefore was thus not able to contribute to the child's support. In the present case, the father had no such excuse. Indeed, his own testimony reveals that, during the entire period, he was fully capable of obtaining fulltime employment but refused to do so. His voluntary assumption of the debts of his new wife and his support of her child for a limited period belie his claim of inability to support his own child. The record here shows that petitioner has met his burden of proof as to the father's "ability."

The findings of the District Court as to the issues of the father's contribution to the support of the child and his

-6-

ability to so contribute are vacated.   The case is remanded

to the District Court for further proceedings on the petition

for adoption.

_____
                    Justice

We Concur:

_____
        Chief Justice

_____

_____
                Justices

Mr. Justice Daniel J. Shea dissenting:

I dissent.

Regardless of what name is given to the statute involved (section 40-8-111(1), MCA), the undeniable fact is that we are interpreting a statute which has an irrevocable sanction: a natural parent can forever lose his parental rights. Because, however, the statute is, in essence, a penal statute, it must be strictly construed against the petitioner and in favor of the natural father. That is true of all civil statutes penal in nature. Missoula High School Legal Defense Assoc. v. Supt. of Public Instruction (December 22, 1981), ___ Mont. ___, ___ P.2d ___, 38 St.Rep. 2164; and State v. State Highway Patrol (1958), 133 Mont. 162, 321 P.2d 612. Few civil statutes impose a more severe sanction than one forever terminating parental rights.

The language "has not contributed to the support of the child during a period of one year before the filing of the petition for adoption," is ambiguous, and that is precisely why this Court has been called upon to interpret the phrase "has not contributed to the support of the child . . ." The legislature chose not to specify or deign what it considers to be a "contribution to the support of the child . . ." Because we are dealing with a penal statute, this Court should not provide an interpretation by a definition favoring the termination of parental rights. Rather, this Court should strictly construe this statute to mean that any kind of support of the child within the one year period will effectively prevent a determination of whether it would be in the best interests of the child to be adopted.

The case of In Re Adoption of Smigaj (1975), 171 Mont.

-8-

537, 560 P.2d 141, did construe section 40-8-111(1)(a)(v), MCA, to mean "financial support that a parent owes a child." But the Court failed to acknowledge that it was interpreting a penal statute that must be strictly construed against the penalty--the penalty of forever losing one's child. Therefore, Smigaj was incorrectly decided. Here the majority has ignored the fact that section 40-8-111(1), is, in essence, a penalty statute applied to a person who has refused to consent to the adoption of his child.

If the legislature has not explicitly set forth the basis on which the penalty is to be invoked, this Court should fill in the blanks for the legislature. Our duty is to strictly construe the statute against invocation of the penalty. To do that we must liberally construe the terms "contributed" and "support" in favor of the natural parent.

I would affirm the District Court.

Daniel J. Shea
Justice