No. 82-35

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

IN RE THE MARRIAGE OF

PEGGY ANN BURNS,

        Petitioner and Appellant,

   -vs-

DEWEY JAMES BURNS,

        Respondent and Respondent.

---

Appeal from: District Court of the Second Judicial District,
In and for the County of Silver Bow, The Honor-
able Arnold Olsen, Judge presiding.

Counsel of Record:

    For Appellant:

        Joseph C. Engel, III, Butte, Montana

    For Respondent:

        Sweeney and Belke, Butte, Montana

---

        Submitted on Briefs: April 15, 1982

                Decided: June 14, 1982

Filed: JUN 14 1982

*Thomas J. Kearney*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal results from the denial of a petition by the District Court of the Second Judicial District, in and for the County of Silver Bow, for termination of the parental rights of Dewey Burns.

Peggy Burns and Dewey Burns were married on December 31, 1975. Two children were born as issue of their marriage.

At the time of the divorce Peggy was awarded custody of the children. Dewey Burns was ordered to contribute $300 a month to the maintenance of the minor children. He was to make payments to the Clerk of the District Court on the 6th and 21st days of each month beginning April 21, 1978, and continuing until the youngest child reached the age of his majority. Additionally, Dewey Burns was to maintain health insurance coverage for the children and to contribute $100 a month for the support and maintenance of Peggy Burns beginning on April 21, 1978.

From the outset, Dewey Burns failed to make the required contributions. The records of the Clerk of the District Court indicate that the last date on which Dewey Burns made a contribution, prior to the petition to terminate his parental rights, was December 6, 1978.

On November 26, 1980, Peggy Burns petitioned the District Court to terminate the parental rights of Dewey Burns to the parties' two children under section 40-8-111(1)(a)(v), MCA, which provides:

> "(1) An adoption of a child may be decreed when there have been filed written consents to adoption executed by:

> "(a) both parents, if living, or the surviving parent of a child provided that consent is not required from a father or mother:

".  .  .

> "(v) if it is proven to the satisfaction of the court that the father or mother, if able, has not contributed to the support of the child during a period of 1 year before the filing of a petition for adoption;" (Emphasis supplied.)

The petition to terminate was filed prior to the filing of a petition for adoption. See, Commissioners' Notes, contained in Annotations to section 40-8-111, MCA.

After the petition was filed, Dewey Burns made two lump sum payments: one of $2,500 on December 23, 1980, coincidental with the first hearing on the petition to terminate his parental rights; and the second of $3,250 on May 6, 1981, again coincidental with the May 8, 1981, hearing called by the court on the petition to terminate his parental rights.

The appellant, Peggy, argues that these after-the-fact payments should not affect determination of the petition since the wording of the statute speaks about nonsupport _prior_ to the petition to terminate. The appellant also argues she was treating $2,400 of this money as payment of past-due spouse maintenance, which was delinquent in that amount. It is important to note here that Dewey Burns is still several thousand dollars in arrears of his child support obligations.

At the first hearing, held December 19-22, 1980, Dewey Burns argued that despite the fact he had not made his payments to the clerk of court's office, as ordered by the decree, he had paid $925 in cash, plus $400 through his mother, plus $1,400 to the State of Utah the year preceding the petition. Peggy was on welfare in Utah and assigned her claim to the State of Utah for support given these two

-2-

children by the welfare department in Utah. Peggy Burns's testimony indicated she received only $670 from Dewey Burns and that Dewey had no evidence to support his claims. At best, by his own testimony, he contributed $2,725 from December 1978 until December 1980.

The court found that according to the clerk of the court's records the last child support payment by Dewey Burns before the petition to terminate his parental rights was filed on December 6, 1978, and the next payment was filed on December 22, 1980. The court noted that Dewey Burns had made no child support payments through the clerk of court's office for twenty-four months. In addition, the court found that Dewey Burns failed to make support payments as ordered by the court although financially able to do so and that he had maintained contact with the children and knew where they were. The court then, in a finding of fact, found that Dewey Burns had paid a total of $4,750 in back payments on advice of counsel after the filing of the petition to terminate his parental rights.

Peggy Burns takes exception to several of the trial court's conclusions of law as being contradictory to its findings of fact. The court concluded: that the statute is to be interpreted most strictly in favor of preserving the natural parent's rights; that in viewing the evidence in that light, the evidence indicates that Dewey Burns, although financially able to do so, did not support his children for one year prior to the petition to terminate his parental rights; and that Dewey Burns's neglect in making court-ordered child support payments for a period of twenty-four months justified Peggy's seeking to terminate his

parental rights and replace him as the boys' father with her second husband who would have provided a more stable and proper influence. The court, however, declined to terminate the parental rights of Dewey Burns. The court also concluded that because Peggy was justified in bringing an action to terminate Dewey's parental rights for nonsupport of the children, she is entitled to costs and reasonable attorney fees even though the court must hold that the petition to terminate is not well taken and thereby dismissed.

Two issues are presented on appeal:

1. Did the District Court err in declining to terminate the parental rights of Dewey Burns after it had established that he failed to make court-ordered child support payments for a period of twenty-four months prior to the petition to terminate his parental rights?

2. May after-the-fact payments be treated by the recipient as payments of other outstanding obligations?

We find the first issue determinative in this matter. Two recent cases of this Court, Matter of Adoption of SLR (1982), _____ Mont. _____, 640 P.2d 886, 39 St.Rep. 156, and Matter of Adoption of Smigaj (1977), 171 Mont. 537, 560 P.2d 141, are controlling.

Mr. Justice Daly, the author of the majority opinion in SLR, quoted Smigaj in part and stated:

> "'. . . we have no difficulty construing the plain meaning of the words in the context of the consent statutes as referring to the financial support that a parent owes a child.' [Citation omitted.] Here, the father was under a duty, pursuant to the dissolution decree, to provide child support payments of $100 per month. It is undisputed that the father failed to pay any child support over a year before the petition for adoption was filed. The plain meaning approach of Smigaj requires that the father

-4-

contribute _financial_ support to the child.
The failure to provide financial support
cannot be cured by giving the child several
articles of clothing.

"Similarly, the noncustodial parent cannot
satisfy his obligation to provide financial
support by incurring or paying debts which
are unrelated to the child. . ." SLR, 640
P.2d at 887-888.

The failure to provide financial support cannot be cured by
giving the child several articles of clothing.

Justice Daly noted also in Matter of Adoption of SLR,
supra, that the noncustodial parent cannot satisfy his
obligation to provide financial support by incurring or
paying debts unrelated to the child. The express terms of
the statute, as Justice Daly noted, referred to "support
that a parent owes a child." See also, Smigaj, supra.

Further, in SLR, this Court noted that the father had
no valid reason for failing to make even one child support
payment during the entire year preceding the filing of the
petition. He suffered no physical or mental impairment
during that time, and he possessed skills that would have
made him employable (carpentry, labor, operator of heavy
equipment). The father voluntarily chose a lifestyle incon-
sistent with parental support obligations. That he had a
right to choose such a lifestyle is conceded. That he had a
legal right to prevent the adoption of his child, however,
is not consistent with the voluntary failure to contribute
to the child's support. In the words of the California
court: "A statute should not be interpreted in favor of a
father who seeks the benefit of parental rights but shuns
the burden of parental obligations." In Re Burton's
Adoption (1956), 147 Cal.App.2d 125, 305 P.2d 185, 191.

For these reasons, the conclusions of the District

Court as to the issues of father's contribution to the support of the children and his ability to so contribute are vacated. The rights of the father to the children are terminated. The District Court is reversed and ordered to comply with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices