No.  91-167

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

IN RE THE ADOPTION OF
V.R.O.  AND V.N.O.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
               In and for the County of Gallatin,
               The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Bryan L. Asay; Kelley & Asay, Helena, Montana

        For Respondent:

            Linda McNiel; Bozeman, Montana

                              Submitted on Briefs:  June *28*, 1991

                              Decided: October 30, 1991

Filed:

FILED

OCT 30 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Respondent is the stepfather of V.R.O. and V.N.O., two minor children. Respondent filed a petition in the District Court for the adoption of the two children. Appellant, the natural father of the children, opposed the petition. The District Court granted the stepfather's motion for partial summary judgment terminating the natural father's parental rights. The natural father appeals from this decision. We reverse and remand.

The natural father raises two issues on appeal:

1. Did the District Court properly determine that the natural father was able to contribute to the support of the children during the year prior to the filing of the petition for adoption?

2. Did the District Court err when it concluded that it need not consider the best interests of the children before terminating the natural father's parental rights?

V.R.O. and V.N.O. are the natural children of Lydia Crossman (mother) and appellant Kenneth Osborn (natural father). V.R.O. was born in **1982,** and V.N.O. was born in **1985.** In June **1987,** Lydia and Kenneth were divorced. Pursuant to the divorce decree, the children's primary residence was with their mother. Kenneth was granted the right to visitation with his children. He was ordered to pay child support of **$120** per month per child.

In January **1988,** Lydia married respondent Douglas Crossman (stepfather). Kenneth has also remarried and lives with his wife

2

and his wife's daughter. In March 1990, Douglas filed a petition to adopt V.R.O. and V.N.O. Lydia consented to the adoption pursuant to § 40-8-111, MCA. In support of his petition for adoption, Douglas alleged that the natural father had not paid any child support for more than one year, and that the adoption could be decreed without the natural father's consent pursuant to § 40-8-111(1)(a)(v), MCA.

Kenneth opposed the adoption petition. He stated that although he was willing and desired to support his children, he had not been able to contribute to their support on a regular basis during the previous year. He also contended that it was in the best interests of V.R.O. and V.N.O. to maintain a parent-child relationship with him and to have regular visitation with their natural father.

In his answers to interrogatories, Kenneth admitted that he owed arrearages for child support from 1987 ($960), 1988 ($2880), 1989 ($2880), and 1990 ($1920), and that he had only paid *$350* in child support since the divorce. All of that amount was paid in the first few months of 1990. Kenneth stated that he had not been able to pay more because he was trying to start his own business and the business was not yet financially successful.

The stepfather moved the District Court for partial summary judgment terminating the natural father's parental rights. Douglas contended that Kenneth's parental rights could be terminated upon a showing that Kenneth was able to pay, but did not pay child

3

support for a period of one year before the filing of the petition for adoption.

The District Court granted Douglas's motion for partial summary judgment terminating the natural father's parental rights. The District Court noted that the $350 in child support payments Kenneth made in 1990 should be applied first to the arrearages from prior years. *See, e.g., Matter of Adoption of R.A.S.* (1984), 208 Mont. 438, 679 P.2d 220. The District Court determined that Kenneth was able to pay child support during the year before the filing of the adoption petition. The District Court concluded that because Kenneth was able to pay child support, but did not pay, his consent to the adoption of V.R.O. and V.N.O. was not required pursuant to § 40-8-111(1)(a)(v), MCA. Further, on the basis of Kenneth's failure to pay child support, the District Court granted the motion for partial summary judgment and terminated Kenneth's parental rights.

Kenneth appeals from this decision.

I

Did the District Court properly determine that the natural father was able to contribute to the support of the children during the year prior to the filing of the petition for adoption?

Kenneth admits that he has only paid a total of $350 in child support since the June 1987 divorce. He does not claim that he supported his children during the year preceding the filing of the adoption petition. He contends, however, that the District Court

4

erred when it concluded he was able to pay child support during this period.

Because parental rights involve a fundamental liberty interest, a judicial decree terminating such rights must be supported by clear and convincing evidence. *Matter of Adoption of R.M.* (1990), 241 Mont. 111, 115, 785 P.2d 709, 711. In order to determine whether a parent is "able" to contribute to child support, the trial court must examine several factors. These factors include:

1) The parent's ability to earn an income:

2) The parent's willingness to earn an income and support his child:

3) The availability of jobs;

4) The parent's use of his funds to provide himself only with the bare necessities of life prior to providing support for his child.

*Matter of Adoption of K.L.J.K.* (1986), 224 Mont. 418, 423, 730 P.2d 1135, 1139.

The District Court must consider the non-supporting parent's ability or inability to pay as it relates to the year preceding the filing of the petition for adoption; in this case the period of March 1989 to March 1990. Section 40-8-111(1)(a)(v), MCA. Income received during this period is obviously relevant to ability to pay child support. However, income or property received more than a year before the filing of the petition may also be available to the parent for use in paying child support. Further, lack of income

5

during the statutory period is not necessarily determinative on the issue of ability to pay. *See, e.g., Matter of Adoption of B.L.P.* (1986), 224 Mont. 182, 728 P.2d 803 (father voluntarily gave up a steady job for a potentially more lucrative position which failed to materialize, and father's financial priorities obviously did not include providing child support); *Matter of Adoption of S.L.R.* (1982), 196 Mont. 411, 640 P.2d 886 (parent cannot voluntarily remain unemployed and then claim inability to pay as an excuse for not paying child support).

The District Court's order granting partial summary judgment mentions the following facts in support of its determination that Kenneth was able to provide child support:

1. Kenneth owned certain assets, including real property in Flathead County, two guitars, a PA system, two 1970 model vehicles, rifles, chain saws, and a truck topper:

2. Kenneth received a lump sum workers' compensation settlement of $24,000 in December 1986;

**3.** Kenneth did not come into court to attempt to modify the child support payments, but simply chose not to pay support.

It is not clear, however, whether the listed assets were convertible to cash which could be used to pay child support, or whether any of the 1986 workers' compensation settlement remained available for this use. The real property mentioned is apparently the home of Kenneth and his new family. Normally, a home should qualify as a "necessity," and it is not clear that sale of the home

6

would result in additional money being available for child support. The District Court's findings do not include any discussion of Kenneth's income or ability to earn income during the relevant period, or the cost of providing himself with the necessities of life.

We conclude that the District Court's findings are insufficient on the issue of Kenneth's ability to pay child support. Accordingly, we remand this matter to the District Court for further findings on this issue.

## II

Did the District Court err when it concluded that it need not consider the best interests of the children before terminating the natural father's parental rights?

The natural father contends the District Court erred when it concluded that it need not consider the best interests of the children before terminating his parental rights. We agree.

A finding under § 40-8-111(1)(a)(v), MCA, that the parent, although able, failed to contribute child support during the statutory period, goes to the issue of whether the parent's consent is required for adoption. Neither the adoption nor the termination of parental rights follows automatically from this finding. **See** § 40-8-111(1), MCA ("[a]n adoption of a child *may* be decreed . . . ." [emphasis added]). Having determined that the non-supporting parent's consent to adoption is not required, the district court must then exercise its discretion in determining

7

whether the adoption is in the child's best interest. Sections 40-8-123(1) and 40-8-124(6), MCA. After the final decree of adoption is entered, the adopting parent assumes the legal relationship of parent to the child, and the natural parent is relieved of all parental rights and responsibilities. Section 40-8-125(1) and (2), MCA.

In *Matter of Adoption of S.T.V.* (1987), 226 Mont. 18, 733 P.2d 841, the district court determined that although the natural father had failed to pay child support, there was an ongoing beneficial and loving relationship between the father and the child, and that the child's interests were best served by continuing that relationship. Affirming the district court's decision, this Court stated:

> Appellant's assertion that an adoption petition should be granted immediately upon determination that the natural father's consent is not required has no basis in law. It focuses solely upon the father's failure to provide financial support and disregards completely the needs of the child. The child's best interest is one of the most important factors to be considered in determining whether a petition to adopt should be granted. Section 40-8-124(6), MCA. Once the statutory requirements for consent to an adoption are met (§ 40-8-111, MCA), the best interests of the child becomes the paramount consideration. *In the Matter of the Adoption of Smigaj* (1977), 171 Mont. 537, 560 P.2d 141.

*Adoption of S.T.V.*, 733 P.2d at 842.

Respondent cites certain past decisions of this Court, e.g., In *Re Adoption of S.E.* (1988), 232 Mont. 31, 755 P.2d 27, for the proposition that parental rights may be terminated simply upon a showing that the parent, without legal excuse, failed to provide

8

child support during the statutory period. This view is in conflict with our reasoning in cases such as *Adoption of S.T.V.*, quoted above. To the extent that language in our prior cases is in conflict with **Adoption** of *S.T.V.*, it is disapproved.

The natural parent's rights cannot be terminated under § 40-8-111, MCA, independent of the determination that adoption is appropriate. Adoption is not appropriate unless it is found to be in the child's best interest. In evaluating the child's best interest for purposes of the chapter on adoption, the court should consider benefits of the child's relationship with the natural parent in addition to those benefits derived from financial support.

For these reasons, we reverse the judgment of the District Court terminating Kenneth's parental rights and remand this case to the District Court for further proceedings consistent with this opinion.

Reversed and remanded.

_____
'Justice

We concur:

_____
Chief Justice

_____

9

William E. Hunt

Karla M. Gray

R. C. McDonough

_____
Justices

October **30, 1991**

<u>CERTIFICATE OF SERVICE</u>

**I** hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Bryan L. Asay
Kelley & Asay
328 Fuller Ave.
Helena, MT  59601

Linda McNiel
Attorney at Law
502 S. 19th, Ste. 201
Bozeman, MT  59715

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy