JUSTICE TRIEWEILER
dissenting.
I dissent from the majority opinion.
A natural parent has a “fundamental liberty interest” in his continuing parental relationship with his children. Santosky v. Kramer (1982), 455 U.S. 745, 753, 102 S. Ct. 1388, 1394-95, 71 L. Ed. 2d 599, 606; see Matter of R.B., Jr. (1985), 217 Mont. 99, 103, 703 P.2d 846, 848. While allowing for the fact that there is great variation in the quality of parent-child relationships, it still may be the most important human relationship that exists. It is for that reason that our courts and legislatures have allowed termination of that relationship without a parent’s consent under only the most extreme circumstances. Those circumstances require not just lack of support, but a degree of culpability that is strikingly absent in this case.
Section 40-8-111, MCA, requires consent of both living natural parents prior to adoption except for limited circumstances. According to subsection (l)(a)(v) of that statute, failure to contribute to the child’s support during the year preceding the petition for adoption is only a basis for waiving consent when it can be proven that the noncontributing parent was “able” to contribute to the child’s support.
We have been insistent in the past that someone petitioning to adopt over the objection of a natural parent must prove not only the absence of support, but that the nonsupporting parent had the ability to contribute to the child’s support. In Matter of Adoption of J.B.T. (1991), 250 Mont. 205, 207-08, 819 P.2d 178, 179, we stated:
For the court to find that a parent’s consent is not necessary to terminate its parental rights, the burden of proof requires that there must be clear and convincing evidence that the parent has not contributed to the support of the child for one year and was able to do so. In re Adoption of S.E. (1988), 232 Mont. 31, 35, 755 P.2d 27, 29. Hence, the statute requires a two-tier analysis before parental rights can be terminated. Matter of Adoption of R.A.S. (1984), 208 Mont. 438, 442, 679 P.2d 220, 223. First, the court must decide if the nonconsenting parent failed to contribute to the *389 support of the child during a period of one year prior to the filing of the petition. The court must then determine if the nonconsenting parent had the ability to pay child support. Matter of Adoption of S.L.R. (1982), 196 Mont. 411, 413-14, 640 P.2d 886, 887. The burden of proof falls upon the petitioner to show that the two-prong test is met. Adoption of R.A.S., 679 P.2d at 223; Adoption of S.L.R., 640 P.2d at 886-87. Because the natural parent can forever lose parental rights, this Court requires strict compliance with the statute. In re Adoption of Biery (1974), 164 Mont. 353, 359, 522 P.2d 1377, 1380. [Emphasis added].
Based upon the standard articulated in the preceding case, the natural father in this case was entitled to a directed verdict following petitioner’s proof.
Petitioner called three witnesses, none of whom had anything relevant to say about the father’s ability to support his two daughters during the previous year. The first witness was Robert Blair, a veterinarian from California, who had graduated from veterinary school with the natural father. Basically he testified to what he had earned in California since graduation. So what?
The next witness was Timothy Barth, the petitioner. He testified that during the previous year the two children who were the subject of the petition had not received support from their natural father, and that to his knowledge the natural father was employed. He also testified that the natural father drove a 1990 blue Chevy pickup. No testimony was given about the father’s ability to pay.
The final witness called by petitioner was Karen Barth, the natural mother of the children. She testified that she had received no child support payments during the previous year, and that pursuant to the decree of dissolution, her former husband was obligated to pay $200 a month. She offered no testimony about his ability to pay child support during the previous year.
The aforementioned witnesses were the sum total of evidence presented by petitioner. As a matter of law, based on our previous decisions, petitioner did not satisfy his burden of proof, and his petition should have been dismissed by the District Court at the conclusion of his evidence.
The only witness to testify about the natural father’s ability to pay was the father himself. He acknowledged that at the time of the hearing he was a practicing veterinarian and that his gross income during the preceding year had been $30,000 to $32,000. However, it was also uncontroverted that his net income for the 12 months *390 preceding the date on which the petition was filed in this case was $23,444, and that his basic living expenses, for bare necessities, during the same period of time were $24,220. In fact, in its Finding of Fact No. 12 the District Court listed those expenses from which the $24,000 figure was arrived at as follows:
12. In the year preceding the filing of the adoption petition, John Heikkila’s living expenses were as follows:
Category Annual Monthly
Rent $3180 $265
Utilities 840 70
Food 3650 300
Clothing 300 25
Entertainment 180 15
Personal care 416 35
Pickup 2513 359
Insurance 1395 115
Fuel 1200 100
Maintenance 280 24
License and Dues 566 47
Attorney Fees 600 50
Life Insurance 564 47
Student Loans 8376 698
Gifts 160 14
Totals $24,220 $2,164
The above figures only take into account those bills that the father actually paid. He had many other bills which he was juggling and periodically was unable to pay. He was in default on three different college loans, and he was also in default on loans which he owed to his mother, his uncle, the Hamilton Cattle Company, and his former wife’s parents. At one time his electricity was shut off for late payment.
He had no television, no savings account, no investments, no major credit cards, and no health insurance.
His total debt at the time of trial was $72,000, including $52,000 for student loans, over $10,000 in back due child support, and the various other debts that have been mentioned. He has not filed for *391 bankruptcy because he testified that the student loans and the child support could not be discharged and all that would be accomplished would be the loss of his pickup, which is necessary for his employment.
At no time since his graduation from veterinary school has the natural father’s income equalled his basic living expenses, and there have been times during that period when he went without a telephone and shared expenses with another in order to survive.
Under these circumstances, what did the District Court, and what does the majority, expect? The question in this case is not whether the natural father’s obligation for child support should be discharged. His debt to his children continues to accrue and will never be discharged, and can be collected when his financial situation improves to the point where he is able to pay it. The question in this case is whether his right to parenthood should be terminated because he willfully refused to pay child support when he was able to do so. We have in the past articulated standards by which “ability’ to pay child support is to be determined. Those standards have been ignored in the majority opinion.
In our recent decision in In re Adoption of V.R.O. and V.N.O. (1991), 250 Mont. 517, 822 P.2d 83, we reiterated the following criteria to be considered when determining whether a nonpaying natural parent had the ability to make child support payments:
Because parental rights involve a fundamental liberty interest, a judicial decree terminating such rights must be supported by clear and convincing evidence. Matter of Adoption of R.M. (1990), 241 Mont. 111, 115, 785 P.2d 709, 711. In order to determine whether a parent is “able” to contribute to child support, the trial court must examine several factors. These factors include:
1) The parent’s ability to earn an income;
2) The parent’s willingness to earn an income and support his child;
3) The availability of jobs;
4) The parent’s use of his funds to provide himself only with the bare necessities of life prior to providing support for his child.
Matter of Adoption of K.L.J.L. (1986), 224 Mont. 418, 423, 730 P.2d 1135, 1139.
Adoption of V.R.O., 822 P.2d at 85.
The first three factors are not in dispute. The fourth factor is the factor which was never mentioned by the District Court, nor the majority in this case. After reviewing the transcript of the hearing in *392 this case, and the District Court’s findings of fact, I conclude that the natural father in this case had no money left after providing himself with the bare necessities of life, and therefore, was, as a matter of law, unable to contribute to the support of his children during the period of time preceding the petition for adoption.
Notwithstanding the high-minded tone of the concurring opinion, the result in this case ignores existing law regarding what constitutes the “ability” to pay and ignores the best interests of the children. Notwithstanding the heroic examples of self-sacrifice immortalized in the concurring opinion, termination of a parent-child relationship is a draconian remedy for parents who do not measure up to the concurring author’s ideals for parenthood. The sermonizing in the concurring opinion, which captures the real essence of the majority’s thinking, may have some place in a church service, but is highly irrelevant to the legal issues in this case.
Apparently it is the majority’s conclusion that debts which result in collection letters and threatened suits, along with whatever subsequent execution would result, are not “necessities of life.” I disagree, and so would the natural father’s creditors. If the debts can be reduced to judgment, and a subsequent order entered enforcing the judgment, then it is certainly “necessary” that they be paid.
While the enforcement of child support obligations, to the extent possible, is certainly a commendable concern, punishing a natural parent by terminating his parental rights when support is not possible does not serve the best interests of his children, or anyone else. His children are no better off financially as a result of this decision, and may certainly be harmed by their father’s future inability to maintain or establish any relationship with them. While the majority may now feel “tougher” on nonsupporting parents, the interests of the children seem to have been forgotten.
In this case, petitioner failed to satisfy his burden of proof by establishing that the natural father was “able” to make child support payments during the year preceding the date on which the petition for adoption was filed, therefore, the natural father’s consent to adoption was required. For these reasons, I dissent from the majority opinion and would reverse the judgment of the District Court.